UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-62074-GAYLES

**FERNANDO MAYORAL, ALBERTO MAYORAL, CLEAR TITLE & ESCROW GROUP LLC, a Florida Limited Liability Company**,

Plaintiffs,

v.

**ALONDRA SALIN, and other unknown co-conspirators, and JP MORGAN CHASE BANK N.A.**,

Defendants.

_____/

**ORDER ISSUING TEMPORARY RESTRAINING ORDER
AND GRANTING EXPEDITED DISCOVERY**

**THIS CAUSE** comes before the Court on Plaintiffs', Fernando Mayoral, Alberto Mayoral, and Clear Title & Escrow Group, LLC, Motion for Temporary Restraining Order, Preliminary Injunction and Expedited Discovery (the "Motion") [ECF No. 4]. The Court has considered the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

**BACKGROUND**[1]

**I.    Factual Background**

On August 23, 2021, Plaintiff Fernando Mayoral ("Fernando") entered into a Residential Contract for Sale and Purchase (the "Contract") for the purchase of a condominium in Palm

---

[1] The relevant pleadings to Plaintiffs' Motion include: (1) the Verified Complaint, [ECF No. 1]; (2) the exhibits attached to the Verified Complaint, [ECF No. 1-2]; (3) the Motion, [ECF No. 4]; and (4) the Affidavit of Aisha Khan Lara in Support of Motion for Preliminary and Temporary Injunction, [ECF No. 4-1].

Springs, Florida, with a closing date of October 6, 2021. [ECF No. 1-2 at 2–14]. Fernando purchased the condominium for a price of $102,000.00 which consisted of an initial deposit of $5,000.00, to be paid to Plaintiff Clear Title & Escrow Group, LLC ("CT&E") and to be held in its escrow account, and a balance to close of $97,000.00. *Id.* at 2.

On September 20, 2021, Aisha Khan Lara, CT&E's closing agent, emailed Fernando at his personal email account, mayoralfer@gmail.com, attaching a HUD-1 Closing Statement and instructions to wire funds to CT&E's escrow account. *See id.* at 22–23; 29–32. Ms. Lara instructed Fernando to not send the wire transfer until she received an updated estoppel. *Id.* at 23. On September 21, 2021, Ms. Lara received an email from a fraudulent account, mayoalfer@gmail.com, which purported to be Fernando, asking if Ms. Lara received the updated estoppel. *Id.* at 39. Ms. Lara exchanged several emails with the fraudulent account and eventually sent the fraudulent account an updated HUD Settlement Statement and wire transfer information. *Id.* at 36–38.

That same day, Fernando received several emails from an account, Aisha@LawFlorida.com, which purported to be Ms. Lara, but that Plaintiffs allege were sent by Defendant Alondra Salin ("Salin"). The emails Fernando received contained the incorrect telephone number for CT&E and cell phone number for Ms. Lara. The first email informed Fernando that he would receive another wiring instruction to wire funds, stating that "[t]he previous account is undergoing audit at the moment" and that "[t]he number will change a little." *Id.* at 52. The second email included different wiring instructions and directed Fernando to wire the funds and to "[l]et [Ms. Lara] know when the funds have been sent out and you have a receipt so [she] can inform Alondra Salin who is in charge of the accounts department of you [sic] incoming transfer." *Id.* at 50. The third email stated that the updated estoppel was not received and

advised Fernando to "proceed with the transfer so we do not have anything which may cause closing delays. The estoppel shouldn't be much so I am sure we can find a way to receive the balance when it comes in." *Id.* at 49. After requesting an updated amount to be transferred, Fernando received an additional email with a HUD Settlement Statement reflecting an amount due of $97,231.38. *See id.* at 48, 58–59.

On September 23, 2021, Fernando instructed Banque Pictet & Cie, SA ("PICTET") to wire transfer $97,299.72 from his father's, Plaintiff Alberto Mayoral, account to an account titled "Alondra Salin – Clear Title and Escrow Group" at Defendant JP Morgan Chase Bank N.A. ("Chase"). *Id.* at 61. Plaintiff alleges that Chase did not obtain signatures from CT&E's only managing member.

## II.   Procedural History

On October 4, 2021, Plaintiffs filed their Verified Complaint against Defendants, raising the following causes of action: (1) fraud as to Salin (Count I); (2) negligence as to Chase (Count II); (3) refund of unauthorized and ineffective funds transfer against Chase (Count III); and (4) aiding and abetting fraud against Chase (Count IV). [ECF No. 1]. On October 5, 2021, Plaintiffs filed the instant Motion in which they seek a temporary restraining order enjoining Defendants "from directly or indirectly disbursing, spending, moving, transferring, secreting, assigning, conveying, destroying, encumbering, liquidating, mortgaging, selling, or in any other manner disposing of the assets . . . and freezing the certain bank account(s) owned or controlled by [Salin at Chase]." [ECF No. 4 at 1]. Plaintiffs also request a hearing on their application for preliminary injunction and seek an entry of a preliminary injunction against Defendants. *Id.* at 1–2. Finally, Plaintiffs request expedited discovery of certain documents and interrogatories as to Defendants. *Id.* at 16.

3

## LEGAL STANDARD

Temporary restraining orders "are meant to preserve the status quo until a preliminary-injunction hearing is held . . . ." *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021). To obtain a temporary restraining order, the moving party must demonstrate: (1) "a substantial likelihood of success on the merits;" (2) "that irreparable injury will be suffered if the relief is not granted;" (3) "that the threatened injury outweighs the harm the relief would inflict on the non-movant;" and (4) "that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–24 (11th Cir. 2005) (per curiam). Additionally, a court may only issue a temporary restraining order *without notice* to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). "It is well settled that courts may exercise their broad equitable powers by granting *ex parte* temporary restraining orders before a defendant has been served and given an opportunity to respond." *Commodity Futures Trading Commission v. Fingerhut*, No. 20-CIV-21887, 2020 WL 2747448, at *2 (S.D. Fla. May 26, 2020) (citing Fed. R. Civ. P. 65(b)).

## DISCUSSION

After reviewing the pleadings and record, the Court finds that a temporary restraining order is warranted. As an initial matter, the Court is satisfied that a temporary restraining order may be issued without notice to Defendants. Plaintiffs have established specific facts that show an irreparable damage that would be suffered and notified Chase of the fraudulent activity prior to filing this action. *See* [ECF No. 4 at 3–10, 17–18].

**I.       Plaintiffs' Substantial Likelihood of Success on the Merits**

As an initial matter, Plaintiffs' Motion fails to address the "likelihood that Plaintiffs will prevail on the claims they assert in their [Verified] Complaint . . . ." *Whitmire v. Monat Glob. Corp.*, No. 18-CIV-20636, 2018 WL 2021355, at *1 (S.D. Fla. Apr. 6, 2018). Nonetheless, "[a]t this infantile stage of the proceedings, considering only the facts as laid out in the Verified Complaint," *eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1135 (S.D. Fla. 2021), the Court finds that Plaintiffs have shown a substantial likelihood of success on the merits of some of their claims in the Verified Complaint. Specifically, Plaintiffs have shown a substantial likelihood of success on their fraud claim against Salin and their negligence claim against Chase. The Court finds, however, that Plaintiffs have not shown a substantial likelihood of success on the merits of their refund of unauthorized and ineffective funds transfer and aiding and abetting fraud claims against Chase.

As to their fraud claim against Salin, Plaintiffs must establish by clear and convincing evidence:

> (1) A misrepresentation of a material fact; (2) The representor of the misrepresentation, knew or should have known of the statement's falsity; (3) Intent by the representor that the representation will induce another to rely and act on it; and (4) Resulting injury to the party acting in justifiable reliance on the representation.

*Cibran Enters., Inc. v. BP Prods. N.A., Inc.*, 365 F. Supp. 2d 1241, 1252–53 (S.D. Fla. 2005) (quoting *Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306, 308 (Fla. 4th DCA 1990)). Plaintiffs have alleged with specificity Salin's misrepresentations, knowledge of the falsity of Salin's statements, Salin's intent to induce Fernando to rely and act on Salin's representations, and Fernando's reliance on Salin's misrepresentations to wire funds to a fraudulent account. [ECF No. 1 at 9–13].

5

As to their negligence count against Chase, Plaintiffs must show a "duty, breach, causation, and damages." *Bryan v. Galley Maid Marine Prods., Inc.*, 287 So. 3d 1281, 1285 (Fla. 4th DCA 2020) (citation omitted). Plaintiffs have alleged sufficient facts to establish a negligence claim against Chase based on its failure "to exercise reasonable care with respect to the opening and maintaining of any and all accounts opened in the name of CT&E and with respect to the safekeeping of funds that were transferred into the said accounts . . . ." [ECF No. 1 at 16 ¶ 61].

Plaintiffs' refund of unauthorized and ineffective funds transfer claim is based in Florida Statute § 670.204, which states that:

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is not authorized and not effective as the order of the customer . . . , the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount . . . .

Fla. Stat. § 670.204. The Eleventh Circuit has interpreted this provision to "require[] a receiving or beneficiary bank to disgorge funds that it knew or should have known were obtained [fraudulently] when it accepted a wire transfer . . . ." *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1275 (11th Cir. 2003). Here, Plaintiffs fail to allege or establish that Chase "knew or should have known" that Salin fraudulently obtained the funds Fernando wired to her account.

Finally, a showing of aiding and abetting requires the Plaintiffs to allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and [abettor]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906–07 (11th Cir. 2012) (per curiam). *See also Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, No. 15-CIV-60653, 2015 WL 12862724, at *3 (S.D. Fla. Aug. 20, 2015) ("To state a cause of action for aiding and abetting fraud, a plaintiff must allege '(1) there existed an underlying

fraud; (2) the defendant had knowledge of the fraud; and (3) the defendant provided substantial assistance to advance the commission of the fraud.'" (quoting *Platinum Ests., Inc. v. TD Bank, N.A.*, No. 11-CIV-60670, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012))). Here, Plaintiffs have failed to establish the second and third elements of their aiding and abetting fraud claim against Chase. The allegations in the Verified Complaint are nothing more than conclusory statements of Chase's knowledge and aid in Salin's fraud and are insufficient to establish the claim. *See Lawrence*, 455 F. App'x at 907 ("Plaintiffs' allegations fall short of [*Bell Atl. Corp. v.*] *Twombly*'s requirements."). *But see Giddy & Caddy, P.A.*, 2015 WL 12862724, at *3 (noting questionability of whether Florida law provides a cause of action for aiding and abetting fraud). Moreover, "Florida law does not require banking institutions to investigate transactions." *Lawrence*, 455 F. App'x at 907.

On balance, Plaintiffs have demonstrated a substantial likelihood of succeeding on the merits of two of their four causes of action, which favors issuing a temporary restraining order.

**II.     Plaintiffs' Will Suffer Irreparable Injury**

Plaintiffs argue that they will suffer irreparable harm if a temporary restraining order is not issued against Defendants because Salin will likely dissipate the fraudulently obtained funds. [ECF No. 4 at 13–14]. Plaintiffs note that those "identifiable funds [are] intended to be used to purchase real property, where the closing is contractually required to occur . . . on October 6, 2021." *Id.* at 14. "To demonstrate irreparable harm, a movant must show 'that the injury cannot be undone through monetary remedies.'" *Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1322 (S.D. Fla. 2020) (quoting *Gayle v. Meade*, --- F. Supp. 3d ---, No. 20-CIV-21553, 2020 WL 3041326, at *20 (S.D. Fla. June 6, 2020)). The Court finds that Plaintiffs have established an irreparable injury that cannot be undone through monetary remedies. The funds at issue are needed to complete the

purchase of specific property identified in the Contract. While Fernando may very well regain the transferred funds, his ability to purchase that property is potentially jeopardized by Salin's fraudulent acts. Therefore, Plaintiffs have shown that they will suffer irreparable injury if the temporary restraining order is not issued.

### III. The Threatened Injury Outweighs the Harm to Defendants

Plaintiffs have established that the threatened harm they will suffer without a temporary restraining order outweighs the harm that may be caused to Defendants. Here, Plaintiffs seek a temporary restraining order to restrict the movement of the funds Fernando wired to the fraudulent account Salin owns with Chase. Without the temporary restraining order, Plaintiffs will likely lose those funds and the property they intend to purchase. Conversely, neither Chase nor Salin will suffer a greater harm if a temporary restraining order is issued because the funds at issue are being fraudulently held in Salin's Chase account. "Where a plaintiff seeks to enjoin the transfer of property fraudulently conveyed, and in contrast a Defendant would simply be stripped of the ability to enjoy the fruits of its fraudulent activities, the balance of equities falls in favor of the Plaintiff." *HPC US Fund 1, L.P. v. Wood*, No. 13-CIV-61825, 2013 WL 12092104, at *2 (S.D. Fla. Aug. 23, 2013). Therefore, the balance of harm favors issuing a temporary restraining order.

### IV. Entry of a Temporary Restraining Order Serves the Public Interest

The Court also finds that it would serve the public interest to issue a temporary restraining order in this matter. First, the temporary restraining order will ensure Defendants' compliance with the law. Second, the temporary restraining order will ensure that the funds at issue are not disbursed or used prior to resolution of this matter. "Indeed, the entry of a [temporary restraining order] would serve the public interest by preventing Defendants from dissipating the fraudulently obtained monies, which appear to rightfully belong to [Plaintiffs]." *Bloomfield Institutional*

*Opportunity Fund, LLC v. Allen Inv. Props., LLC*, No. 8:10-CIV-1475, 2010 WL 3394265, at *7 (M.D. Fla. Aug. 9, 2010), *report and recommendation adopted*, No. 8:10-CIV-1475, 2010 WL 3394242 (M.D. Fla. Aug. 26, 2010). Finally, it is in the public interest to limit—and eliminate—similar acts of cyber fraud. Thus, the public interest favors issuing a temporary restraining order in this action.

V.     **Request for Expedited Discovery**

"A district court has the discretion to order expedited discovery if the party seeking it establishes 'good cause' for such discovery." *Max'is Creations, Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CIV-22920, 2021 WL 4077957, at *1 (S.D. Fla. Sept. 7, 2021) (citation omitted). "Good cause can be shown by establishing some impelling urgency which necessitates action forthwith and excuses giving notice to the other party[.]" *Ghaffari v. Collins Tower Ass'n*, No. 13-CIV-21037, 2013 WL 12141254, at *1 (S.D. Fla. June 18, 2013) (citation and internal quotation marks omitted) (alteration in original). In deciding whether a party has shown good cause, a court will consider: (1) "whether a motion for preliminary injunction is pending;" (2) "the breadth of the requested discovery;" (3) "the reason(s) for requesting expedited discovery;" (4) "the burden on the opponent to comply with the request for discovery;" and (5) "how far in advance of the typical discovery process the request is made." *Max'is Creations, Inc.*, 2021 WL 4077957, at *2 (quoting *St. Jude Med. S.C., Inc. v. Biosense Webster Inc.*, No. 6:13-CIV-333-Orl-28, 2013 WL 1502184, at *2 (M.D. Fla. Apr. 12, 2013)). Moreover, "courts in this District have permitted expedited discovery to allow a plaintiff to mitigate any further irreparable harm caused by a defendant's ongoing infringement scheme." *Id.*

Here, Plaintiffs request that they be permitted to take expedited discovery requiring Chase to produce: (1) records regarding the opening of the account into which Fernando's funds were

deposited, and (2) all records regarding the location of Fernando's funds. [ECF No. 4 at 16]. The Court finds good cause to grant Plaintiffs' request for expedited discovery. The breadth of Plaintiffs' discovery requests is not unduly burdensome. While this case is still in its early stages, such limited discovery may assist the parties in narrowing the issues and fostering a resolution of this matter. Therefore, good cause exists for expedited discovery and the Motion shall be granted.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs', Fernando Mayoral, Alberto Mayoral, and Clear Title & Escrow Group, LLC, Motion for Temporary Restraining Order, Preliminary Injunction and Expedited Discovery, [ECF No. 4], is **GRANTED**.

2. Defendant Alondra Salin, and all persons associated with that name, and Defendant JP Morgan Chase Bank, N.A., together with their agents, servants, employees, attorneys, and all those in active concert or participation with them who receive actual notice of this Order, are hereby temporarily restrained as follows:

    a. From directly or indirectly spending, moving, transferring, secreting, assigning, conveying, destroying, encumbering, liquidating, mortgaging, selling, or in any other manner disposing of assets resulting from the money paid by Banque Pictet & Cie SA, on behalf of Plaintiff Fernando Mayoral, from the account of Plaintiff Alberto Mayoral, or any other account, specifically including, but not limited to:

        i. The monies in any JP Morgan Chase Bank, N.A. account in the name of "Alondra Salin – Clear Title and Escrow Group;" or

        ii.        Any account into which said funds may have been moved or transferred between September 23, 2021, to the present.

3. Defendant JP Morgan Chase Bank, N.A. shall immediately:

   a. Freeze the accounts of Alondra Salin or "Alondra Salin – Clear Title and Escrow Group," including account number *****9886; and

   b. Maintain the freeze of said accounts for a period of **fourteen (14) days**, unless the freeze is extended further.

4. As a condition of this temporary restraining order, Plaintiffs Fernando Mayoral, Alberto Mayoral, and Clear Title & Escrow Group, LLC, shall not be required to post a bond.

5. In accordance with Federal Rule of Civil Procedure 65, this temporary restraining order shall remain in effect until the Court rules on Plaintiffs' application for a preliminary injunction and shall expire **fourteen (14) days** after its entry, unless it is extended for good cause or Defendants' consent to its extension.

6. Plaintiffs shall immediately serve Defendants with this Order and all pertinent documents in this matter.

7. The parties shall appear before the Court for a hearing on Plaintiffs' application for a preliminary injunction at **2:00 P.M. on October 27, 2021** in Court Room 11-1 of the United States District Court for the Southern District of Florida, located at 400 North Miami Avenue, Miami, Florida 33128.

8. The parties are permitted to commence expedited discovery. Defendants shall respond to Plaintiffs' interrogatories, requests for admission, and requests for

production within ten (10) days of service of such requests. Unless granted leave from the Court, the expedited discovery is limited to the following areas:

    a.    Production of Defendant JP Morgan Chase Bank, N.A.'s records regarding the opening of the account into which Plaintiff Fernando Mayoral's funds were deposited; and

    b.    All records related to the location of Plaintiff Fernando Mayoral's funds.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of October, 2021 at 1:15 P.M.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE